445 So.2d 852 (1983)
COFFEE COUNTY ABSTRACT AND TITLE CO., and Frank E. Hearn
v.
STATE of Alabama ex rel. Phillip W. NORWOOD, etc.
81-838.
Supreme Court of Alabama.
September 23, 1983.
As Modified On Rehearing December 2, 1983.
Rehearing Denied February 3, 1984.
*853 Joel F. Dubina and Robert E. Sasser of Jones, Murray, Stewart & Yarbrough, Montgomery, for appellants.
William H. Morrow, Jr., Gen. Counsel, Alabama State Bar, Montgomery, for appellee.
Patricia D. Gurne and Albert A. Foer of Jackson, Campbell & Parkinson, Washington, D.C., and M. Roland Nachman, Jr. for Steiner, Crum & Baker, Montgomery, for amicus curiae American Land Title Ass'n.
ALMON, Justice.
This appeal arises from a judgment granted on a petition for writ of quo warranto filed in the Circuit Court of Coffee County. The State of Alabama, on the relation of Phillip W. Norwood, individually and as chairman of the Unauthorized Practice of Law Committee of the Alabama State Bar, sought the writ against Coffee County Abstract and Title Company, Inc., James C. Key, and Frank E. Hearn, Jr. The complaint charged the defendants with the unauthorized practice of law and sought to have them enjoined from further acts constituting the practice of law.
The circuit court held that James C. Key had not unlawfully engaged in the practice of law, but that Coffee County Abstract and Title Company and Frank E. Hearn, Jr. were unlawfully intruding into the profession and practice of law. The court dismissed Key as a defendant and excluded Hearn and Coffee County Abstract and Title from the profession and prohibited them from practicing law in Alabama. The judgment enjoined these two defendants from:
"a. Preparing, drawing, assisting in preparing or drawing or filling out blanks of deeds, mortgages or other instruments of conveyancing for others which affect or relate to secular rights unless defendants have a proprietary interest in such property; and
"b. Conducting real estate closings in Alabama whether or not the closing is incidental to issuance of title insurance or no fee is made other than the title insurance premium."
The following facts led to the filing of this proceeding: on June 27, 1980, Dennis R. Sundell and John Michael Tomkovich purchased a townhouse in Enterprise, Alabama. They were lieutenants in the United States Army stationed at Fort Rucker and wanted the house as a residence and an investment. Both men were single. Upon arriving in Enterprise, they had gone to Whittaker-Warren Realtors, where Suzanne Byars agreed to show them available houses. They agreed to buy the townhouse at 13 Anthony Circle and signed an agreement of purchase on May 31, 1980. James C. Key signed the agreement as seller. K & G Development owned the property, and Key was the president of K & G.
*854 The sale was closed on June 27, 1980, at the office of Coffee County Abstract and Title. Sundell, Tomkovich, Hearn, and Byars were present, as were Marti Foster, a broker for K & G Development, and Mr. Warren of Whittaker-Warren Realtors. Hearn conducted the closing and at the conclusion thereof invited Sundell and Tomkovich to call him if they had any questions. During the closing, Tomkovich asked Hearn if title was passing in such a way that, should either grantee die, that grantee's heirs would take his interest. Hearn told them that was the case, but the deed in fact passed title to them jointly with right of survivorship.
Shortly after the closing, Sundell and Tomkovich received a telephone call from a local lawyer who informed them he had seen their deed at the courthouse and thought it unusual that two single men had taken title jointly with right of survivorship. Sundell and Tomkovich telephoned Hearn, who continued to advise them that they had received title so that if either died his interest would pass to his heirs at law rather than to the surviving grantee.
The State brought this action charging Key, Hearn, and Coffee County Abstract and Title with practicing law in violation of state statutes and judicial decisions. The practice of law is defined in Alabama at Code 1975, § 34-3-6:
"§ 34-3-6. Who may practice as attorneys.
"(a) Only such persons as are regularly licensed have authority to practice law.
"(b) For the purposes of this chapter, the practice of law is defined as follows:
"Whoever,
". . .
"(2) For a consideration, reward or pecuniary benefit, present or anticipated, direct or indirect, advises or counsels another as to secular law, or draws or procures or assists in the drawing of a paper, document or instrument affecting or relating to secular rights; ...
". . .
"is practicing law.
"(c) Nothing in this section shall be construed to prohibit any person, firm or corporation from attending to and caring for his or its own business, claims or demands, nor from preparing abstracts of title, certifying, guaranteeing or insuring titles to property, real or personal, or an interest therein, or a lien or encumbrance thereon, but any such person, firm or corporation engaged in preparing abstracts of title, certifying, guaranteeing or insuring titles to real or personal property are prohibited from preparing or drawing or procuring or assisting in the drawing or preparation of deeds, conveyances, mortgages and any paper, document or instrument affecting or relating to secular rights, which acts are hereby defined to be an act of practicing law, unless such person, firm or corporation shall have a proprietary interest in such property; however, any such person, firm or corporation so engaged in preparing abstracts of title, certifying, guaranteeing or insuring titles shall be permitted to prepare or draw or procure or assist in the drawing or preparation of simple affidavits or statements of fact to be used by such person, firm or corporation in support of its title policies, to be retained in its files and not to be recorded." (Emphasis added.)
This statute quite clearly prohibits title companies such as Coffee County Abstract and Title from "preparing or drawing or procuring or assisting in the drawing or preparation of deeds." This is exactly what the trial court enjoined Hearn and Coffee County Abstract and Title from doing, with the addition of the phrase "or filling out blanks of deeds." The addition of these words is not an expansion of the statute, but only a finding that "filling out blanks of deeds" is indistinguishable from "drawing or preparing" deeds. Coffee County Abstract and Title argues that attorneys drafted the forms of the deeds which it uses, and that the task of filling in *855 blanks is essentially clerical and does not constitute the practice of law.
This argument overlooks the fact that decisions must frequently be made regarding the information to go into the blanks, the appropriateness of particular clauses in form deeds, and, most germane to this case, the choice of which deed form to use. The fact that Hearn gave Sundell and Tomkovich title as joint tenants with right of survivorship when they wanted, and he thought he had given them, title as tenants in common, amply illustrates the rationale for limiting the preparation of legal documents to licensed attorneys.
The other aspect of the injunction, against conducting real estate closings, is sustainable at least against these defendants because of the evidence that Hearn gave his opinion regarding the effect of the manner of taking title. This constitutes advising or counseling as to secular law, an activity prohibited by the statute. The element of consideration is present under these facts because the evidence shows that the fee charged by Coffee County Abstract and Title included a fee over and above the title insurance premium: it charged $7.50 per thousand dollars, although the title insurance premium was only $2.50 per thousand. Some, if not all, of the excess is the title company's charge for the closing.
Coffee County Abstract and Title cites a number of cases from other jurisdictions as holding that conducting closings and filling in blanks in preprinted forms do not constitute the unauthorized practice of law. None of the cases cited to or found by this Court, however, rely on a statute as specific as § 34-3-6, especially paragraph (c). That paragraph clarifies that the issuance of title insurance and the preparation of affidavits for the title company's own use do not constitute the practice of law. Paragraph (c) emphatically states, however, that title companies "are prohibited from preparing or drawing or procuring or assisting in the drawing or preparation of deeds" or other documents affecting secular rights. This broad language precludes the interpretation urged by the title company that merely filling in blanks is not the practice of law.
While some of the cases from other jurisdictions do hold that title companies may conduct closings, they note that giving legal advice or exercising judgment as to which among competing forms to use would constitute the practice of law. State Bar v. Guardian Abstract & Title Co., 91 N.M. 434, 575 P.2d 943 (1978); Pope County Bar Ass'n, Inc. v. Suggs, 274 Ark. 250, 624 S.W.2d 828 (1981); The Florida Bar v. McPhee, 195 So.2d 552 (Fla.1967); Bar Ass'n of Tennessee, Inc. v. Union Planters Title Guar. Co., 46 Tenn.App. 100, 326 S.W.2d 767 (1959). See also, Land Title Co. of Alabama v. State ex rel. Porter, 292 Ala. 691, 299 So.2d 289 (1974), in which this Court held that a commitment for title insurance did not constitute a title opinion but did not reach the situation where title companies prepared documents or conducted closings.
The witnesses present at the closing disagreed as to whether Hearn advised the purchasers on the legal effect of the deed. Sundell testified that he thought the subject was discussed at the closing but was not sure. Tomkovich testified he was certain that Hearn told them at the closing that they were taking title so that their respective heirs would receive their interests if they or either of them died. Hearn, Byars, and Foster testified that Hearn gave no such advice at the closing. Sundell and Tomkovich stated that Hearn told them both after the closing they had taken title so their shares would descend to their heirs.
Coffee County Abstract and Title and The American Land Title Association (ALTA), in its amicus brief, argue that construing § 34-3-6 to prohibit title companies from conducting closings or filling in blanks would violate constitutional requirements of equal protection and due process. They assert that to deprive title companies of this business without proof of substantial harm to the public deprives them of the right to practice their occupation and improperly *856 discriminates against non-lawyers. The record is replete with testimony by expert witnesses regarding the effect of allowing non-lawyers to perform these functions. Several attorneys testified that in their experience questions requiring legal advice are usually asked at closings. Filling in the blanks of a form necessarily requires deciding which form to use, and the harmful effects of that choice are evident from the facts of this case. The interest of the title companies in conducting this business, to which they refer as being incidental to their business of issuing title insurance, is subordinate to the interest of the state in regulating the practice of law.
Coffee County Abstract and Title and the ALTA argue that § 34-3-6 is vague and ambiguous as the trial court applied it to the title industry and thus violates the industry's right to due process of law. The contention seems to be that the concept of "conducting a closing" is vague and ambiguous and thus the prohibition of such activity violates the requirements of due process. The prohibition against Hearn and Coffee County Abstract and Title conducting closings is justified by the evidence that these defendants gave legal advice in the course of a closing (the title company doing so through its agent). Because the giving of legal advice for a consideration is clearly prohibited by § 34-3-6, the prohibition against conducting closings because of this improper activity cannot be said to violate due process.
The defendants attempted to introduce evidence of alleged investigations by the United States Department of Justice into activities of the Coffee County Bar Association. They argue that this evidence would have proved that the bar association had an improper motive for instituting this proceeding. We agree with the trial court and the State that this evidence was irrelevant and inadmissible. The trial court observed that "I don't know one thing about what the Justice Department did and I trust that that will not have any relevance on whether or not this group is practicing law." A bad motive or intent does not preclude a party from seeking legal redress for an actionable wrong. Sloss-Sheffield Steel & Iron Co. v. Greek, 211 Ala. 95, 99 So. 791 (1924).
For the reasons stated, the judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, FAULKNER, JONES, EMBRY and BEATTY, JJ., concur.
TORBERT, C.J., and SHORES, and ADAMS, JJ., concur specially, with opinion by TORBERT, C.J.
TORBERT, Chief Justice (concurring specially).
While I agree with the majority in this case, it is my view that this opinion does not hold, as a matter of Alabama law, that a title company is engaged in the unauthorized practice of law when conducting a closing of a real estate transaction.
The specific acts which constitute the unauthorized practice of law are and must be determined on a case-by-case basis. Alabama ex rel. Porter v. Dunn & Bradstreet, Inc., 352 F.Supp. 1226 (N.D.Ala. 1972), affirmed, 472 F.2d 1049 (5th Cir. 1973). In the instant case, we affirm the finding of the trial court that the defendant did give legal advice during the course of a real estate closing and conclude that the lower court's prohibition of such future acts was proper.
A detailed discussion of the issue as to closing real estate transactions appears in Bar Ass'n of Tennessee, Inc. v. Union Planters Title Guaranty Co., 46 Tenn. App. 100, 326 S.W.2d 767 (1959). That court quoted the lower court's description of the act of closing:
"C. Closing.
"(1) Upon the preparation of all necessary instruments, the parties are generally called together to execute them.
"(2) At this time, they are presented with a settlement sheet which reflects the financial status of the parties, that is, the amount of money required by the buyer to complete the purchase, the sum *857 which the seller will receive, and other pertinent information.
"(3) The attorney, or closer, either individually or through the title company, proceeds to disburse the funds as reflected by the settlement sheet."
326 S.W.2d at 772.
The Tennessee court upheld the lower court's handling of the closing issue, stating:
"Step C. Closing. The execution of the deeds by the parties may be performed before any notary public, and does not involve the practice of law. The preparation of the settlement sheets, in the Court's opinion, is entirely a clerical procedure which does not require the services of a lawyer and, therefore, cannot be considered as the unlawful practice of law, and the Court so holds.
"Disbursements of funds, of course, may be done by any lawyer, layman, or corporation, so empowered, such as defendant. There is proof to the effect that many lenders of funds for the building and purchase of homes in this area are located away from here. It is a most natural requirement of these lenders that a financially sound institution handle disbursement of funds furnished.
"The chief objection which complainants raise to defendant engaging in Step C is that the parties to the transaction at this point seek legal advice as to the effect of their action. This is not necessarily so, the Court being of the opinion that the proper time to so advise the parties is upon the preparation of the instruments, covered in Step B. The Court, therefore, holds that nothing in Step C constitutes the unlawful practice of law."
326 S.W.2d at 773.
I agree with the Tennessee court's handling of this issue. If the parties to the transaction raise a legal question at the closing, the title company should stop the proceeding and instruct them to consult their attorneys. As long as the closing involves only those steps outlined above, a title company should be permitted to conduct closings, and such conduct is not the unauthorized practice of law.
SHORES and ADAMS, JJ., concur.

ON APPLICATION FOR REHEARING
ALMON, Justice.
Coffee County Abstract and Title Company, in its application for rehearing, states that "the Court has, through its affirmance in toto of the Circuit Court, confused, and not clarified, the question of whether Coffee County Abstract and Title Company can in fact conduct real estate closings." Upon further reflection, we agree that the portion of the trial court's order enjoining Coffee County Abstract and Title Company from conducting closings should be modified to read as follows:
"b. Conducting real estate closings in Alabama at which officers or employees of Coffee County Abstract and Title Company give legal advice or express opinions as to the effect of legal documents, whether or not the closing is incidental to issuance of title insurance."
This alteration is consistent with the reasoning of the original opinion. With this modification, the judgment of the trial court is affirmed.
APPLICATION GRANTED; OPINION EXTENDED; AFFIRMED AS MODIFIED.
All the Justices concur.