In re Anthony BROWN and Karen Braxton Brown, Debtors.

Anthony R. Brown and Karen B. Brown, Plaintiffs,

v.

Goode, Peterson & Hemme f/d/b/a Goode, Peterson & Weintraub, also f/d/b/a Goode & Peterson, A.P.C., and John D. Rittenhouse, Defendants.

Bankruptcy No. 01–2595–W.
Adversary No. 01–80040.

United States Bankruptcy Court, D. South Carolina.

Aug. 24, 2001.

John DeVore Compton, III, Greenwood, SC, for debtors.

Samuel Francis Crews, III, Columbus, SC, for creditor.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon Anthony and Karen Brown's ("Plaintiffs") Complaint seeking sanctions, actual damages, punitive damages and/or treble damages, statutory penalties, costs and attorney's fees from Defendants for their unauthorized practice of law, and related relief. Defendants defaulted in the matter, and the Court held a damages hearing with notice to Defendants at which time Plaintiffs appeared with their counsel. Defendants, however, failed to appear at the damages hearing.

After considering the pleadings, Plaintiffs' Chapter 7 filings, Plaintiffs' testimony, and counsel's arguments, the Court makes the following Findings of Fact and Conclusions of Law pursuant to FED. R. CIV. P. 52, made applicable in bankruptcy proceedings by FED. R. BKRTCY. P. 7052.[1]

## FINDINGS OF FACT

1. The Court finds that this is a core proceeding as defined by 28 U.S.C. § 157 and that this matter is one arising in a case under Title 11. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 157(b)(1) and § 1334.

2. In their Complaint filed with the Court on March 16, 2001, Plaintiffs assert the following causes of action: Aiding and Abetting (wherein Plaintiffs seek joint and several liability of Defendants), Unauthorized Practice of Law, Unfair Trade Prac-

---

1. The Court notes that, to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

tices, Unconscionability, Constructive Trust, and Conversion.[2]

3. Despite being duly and properly served with the Summons and Complaint in this action on March 30, 2001, Defendants failed to respond. Therefore, an Entry of Default was entered by the Clerk of Court on May 14, 2001, pursuant to FED. R. BKRTCY. P. 7055.

4. A hearing on damages was held before the undersigned Judge. Both Plaintiffs testified at this hearing.

5. Prior to 1999, Plaintiffs operated a small doughnut shop in Greenwood, South Carolina. Unfortunately, in 1999 their ground lease was not renewed. This precipitated a chain of events leading to Plaintiffs' economic problems. As a result of these problems, Mrs. Brown sought counseling for her and her husband's economic troubles through her employer, Fuji Employee Assistance Program.

6. The Employee Assistance Program referred Plaintiff to Defendant, John D. Rittenhouse, for bankruptcy counseling.[3]

7. Defendant Rittenhouse appeared to be a member of the law firm of Goode, Peterson and Weintraub, the other Defendant herein.[4] Acting as an agent for the Firm, Rittenhouse advised Plaintiffs that he could assist them in filing a petition for Chapter 7 bankruptcy protection in South Carolina.

8. Defendant Rittenhouse communicated by telephone with Plaintiffs on or about June 1, 1999, and, on or about July 1, 1999, he sent them a bankruptcy questionnaire, which they completed and returned to him on July 27, 1999.

9. In these communications, Defendant Rittenhouse held himself out as a member or affiliate of the Firm.

10. During the parties' communications, Defendant Rittenhouse failed to advise Plaintiffs that neither he nor any member of his Firm was admitted to the South Carolina Bar or to the United States District Court for the District of South Carolina. Nevertheless, Rittenhouse sought to advise Plaintiffs regarding the filing of bankruptcy in South Carolina.

11. Defendant Rittenhouse and the Firm undertook representation of Plaintiffs for a total fee of $1,680.00 and prepared a bankruptcy petition and a set of schedules.[5]

12. Defendant Rittenhouse prepared the bankruptcy petition and schedules and mailed them to Plaintiffs approximately one year later. On several occasions, Plaintiffs sought to contact Rittenhouse about their case and ask him why it was taking so long to file bankruptcy. Despite their efforts, they were unsuccessful in contacting Rittenhouse, but they eventually spoke with representatives of the Firm to inquire when their case would be filed. On those occasions, the Firm's representatives did not inform Plaintiffs that Rittenhouse was not affiliated with the Firm.

13. Eventually Defendant Rittenhouse contacted Plaintiffs and advised them that

---

2. Plaintiffs have withdrawn their counts for Constructive Trust and Conversion.

3. The reasons for a referral to California counsel were not disclosed at the hearing.

4. The Defendant, Goode, Peterson and Hemme f/d/b/a Goode, Peterson and Weintraub and also f/d/b/a Goode and Peterson, A.P.C., will be collectively referred to as the "Firm."

5. A copy of Defendant Rittenhouse's communication with Plaintiffs was received as an Exhibit as well as the voluntary petition and schedules Rittenhouse prepared for them. The Court also received into evidence a letter to Plaintiffs from Thomas B. Goode, managing partner of the Firm, wherein Mr. Goode refused to refund the full balance of the fees paid by Plaintiffs.

he referred their case to an attorney in Columbia, South Carolina, who would file the case for them. However, Rittenhouse never told Plaintiffs the name of the attorney, and Plaintiffs never received any correspondence or telephone communications from any attorney in South Carolina regarding the filing.

14. After their failed attempts to file for bankruptcy relief through Defendants, Plaintiffs sought the assistance of their present counsel of record. Present counsel prepared a new petition and set of schedules and filed these on Plaintiffs' behalf. Contemporaneously with the filing of Plaintiffs' Petition, counsel filed the instant litigation on Plaintiffs' behalf.

15. According to the fee disclosure attached to Plaintiffs' Schedules, present counsel charged Plaintiffs $1,300.00 for the filing which included a filing fee of $200.00. This fee is within the range usually charged by practitioners in the District of South Carolina for similar Chapter 7 cases.

16. Plaintiffs testified that the stress caused to Mrs. Brown as a result of Defendants' representation and mishandling of the bankruptcy filing exacerbated certain medical problems which ultimately resulted in a diminution of her earning capacity. According to her testimony, Mrs. Brown needs two medications to treat her for depression. Her earning capacity has diminished, and she earns $1,750.00 less per month than she earned when working for Fuji. She presently works cleaning houses.[6]

## CONCLUSIONS OF LAW

Plaintiffs' Complaint asserts various causes of action against Defendants. The causes of action that remain outstanding and have not been withdrawn by Plaintiffs are as follows: Aiding and Abetting, wherein Plaintiffs seek joint and several liability against Defendants, Unauthorized Practice of Law, Unfair Trade Practices, and Unconscionability. The Court will address these issues accordingly.

### A. Unauthorized Practice of Law

Plaintiffs allege that Defendants committed the unauthorized practice of law by undertaking the representation of Plaintiffs for the purpose of filing bankruptcy in the District of South Carolina as evidenced by the preparation of a bankruptcy petition and a set of schedules for Plaintiffs. To determine whether Defendants committed the unauthorized practice of law requires a two-step analysis examining (1) whether Defendants were authorized to practice in law in South Carolina and before this Court and (2) whether Defendants' actions constituted the practice of law.

To practice in the United States Bankruptcy Court for the District of South Carolina, an attorney must be admitted to the United States District Court for the District of South Carolina. *See* S.C. LOCAL BKRTCY. R. 9010–I. To be eligible for District Court admission, attorneys must be in good standing with the South Carolina bar. *See* S.C. LOCAL FED. CIV. R. 83.I.02. South Carolina law prohibits any person from practicing law unless the person has been admitted and sworn as an attorney. *See* S.C. CODE ANN. § 40–5–310 (Law. Co-op.1976 & Supp.2001). These rules reflect the general principle that state law governs the practice of law within a state's borders except to the limited extent necessary for the accomplishment of federal objectives. *See Rittenhouse v. Delta Home*

---

**6.** There was no medical testimony or evidence introduced which indicated that Mrs. Brown's health problems were proximately caused by Defendants mishandling of the bankruptcy.

*Improvement, Inc.*, 255 B.R. 294, 298 (W.D.Mich.2000).

Under the evidence presented, there is no indication that Defendants are authorized to practice law in South Carolina and therefore before this Court. Although Defendant Rittenhouse may have been a licensed attorney in California, no evidence indicates that he or any member of the Firm has been admitted to the South Carolina Bar or the United States District Court for the District of South Carolina.

The second step is to determine whether Defendants' activities of offering legal advice to Plaintiffs and undertaking representation of Plaintiffs for the purposes of filing bankruptcy in the District of South Carolina as evidenced by the preparation of a petition and a set of schedules constitute the practice of law. Again, this Court looks to state law to resolve professional ethics issues. *See* 1 COLLIER ON BANKRUPTCY ¶ 8.02[1] (Lawrence P. King ed., 15th ed.2001); *Rittenhouse v. Delta Home Improvement, Inc.*, 255 B.R. 294, 297 (W.D.Mich.2000) (applying Michigan law, the court found that, because the attorney was not licensed in Michigan, maintained a permanent office in Michigan, and regularly engaged in conduct that constituted the practice of law, the attorney committed the unauthorized practice of law); *In re Peterson*, 163 B.R. 665, 672 (Bkrtcy.D.Conn. 1994) (applying Connecticut law, the court found that an attorney not licensed in Connecticut committed the unauthorized practice of law by meeting with debtors, advising them regarding bankruptcy matters, and preparing and filing petitions as well as schedules, statements, and other bankruptcy documents).

 Under South Carolina law, the practice of law is interpreted broadly. Indeed, "[t]he practice of law is not confined to litigation, but extends to activities in other fields which entail specialized legal knowledge and ability." *State v. Buyers Service Co., Inc.*, 292 S.C. 426, 357 S.E.2d 15, 17 (1987). In fact, conduct constituting the practice of law includes a wide range of activities, including the preparation of legal instruments and advising clients of legal matters. *See id.* (holding that several activities relating to a real estate or mortgage loan transaction constitute the practice of law requiring an attorney's supervision, including the preparation of deeds, mortgages, notes, and other legal instruments related to mortgage loans and transfers of real property; performing title examinations and preparing title abstracts; conducting real estate and mortgage loan closings; and filing and recording these instruments as part of the real estate transfer); *State v. Despain*, 319 S.C. 317, 460 S.E.2d 576, 578 (1995) (holding that the preparation of legal documents for presentation in family court constitutes the practice of law when the preparation involves the giving of advice, consultation, explanation, or recommendations on matters of law); *South Carolina Med. Malpractice Joint Underwriting Ass'n v. Froelich*, 297 S.C. 400, 377 S.E.2d 306, 307 (1989) (holding that an attorney licensed in Illinois but not licensed in South Carolina committed the unauthorized practice of law in South Carolina by attending roster meetings and pretrial conferences, participating in numerous depositions, and engaging in settlement negotiations).

Despite not being authorized to practice law in South Carolina or the District Court, Defendant Rittenhouse advised Plaintiffs regarding their filing for bankruptcy, and he prepared a bankruptcy petition and a set of schedules for Plaintiffs. Under the principles set forth by South Carolina courts, both actions are the practice of law as Defendant Rittenhouse used his specialized legal knowledge to offer

legal advice and to draft legal documents. Unquestionably, bankruptcy petitions and schedules are legal documents that require attorneys to offer legal advice in order to explain the documents to their clients. Concomitantly, South Carolina law demands that only authorized, licensed attorneys draft bankruptcy petitions.[7] *See In re Soulisak,* 227 B.R. 77, 80 (Bkrtcy. E.D.Va.1998) (applying similar Virginia law prohibiting non-attorneys from assisting in the completion of legal forms or rendering advice regarding the completion of the forms, the Court held that an attorney not licensed in Virginia engaged in the unauthorized practice of law when he assisted debtors in completing a bankruptcy petition).

While it is uncontroverted that Defendant Rittenhouse was the focal point of the provision of legal services to Plaintiffs, the Court must also consider the Firm's culpability for the transgressions of its agent. The Court finds that Rittenhouse was the Firm's agent because (1) the Complaint alleges that Rittenhouse acted as the Firm's agent, and, in default judgments, allegations of fact are deemed true and (2) both the Firm and Rittenhouse, through their actions, represented a principal-agent relationship. Because Rittenhouse and the Firm are linked in a principal-agent relationship, the Firm is jointly and severally liable for damages caused by its agent. It is a general doctrine of law that principals are liable to third persons in civil suits for the frauds, deceits, concealments, misrepresentations, negligences, and other malfeasances and misfeasances and omissions of duty of the principals' agents. *See* Martin C. McWilliams, Jr., *Agency in* 23 SOUTH CAROLINA JURISPRUDENCE § 80 (Aleta M. Pillick, ed., 1994).

Apparent agency is found "[w]hen a principal, by any such acts or conduct, has knowingly caused or permitted another to appear to be his agent, either generally or for a particular purpose ...." *R & G Constr. Inc. v. Lowcountry Reg'l Transp. Auth.,* 343 S.C. 424, 540 S.E.2d 113, 118 (2000), *rehearing denied* Jan. 29, 2001. In situations of apparent agency, the principal will be estopped from denying the agency relationship to avoid liability to third persons who, in good faith and with reasonable prudence, dealt with the agent in reliance on such appearances. However, the doctrine of apparent agency not only requires the principal to consciously or impliedly represent another to be its agent but also for a third party to rely on the representation and to detrimentally change his or her position in reliance on the representation. *See id.*

The facts present several indicia of an apparent agency relationship between Defendants. First, Defendants split the attorney's fees paid by Plaintiffs. Unless Defendants were running afoul of the prohibition against fee splitting by lawyers who are not members of the same firm, the act of splitting the attorneys' fee signals that Defendant Rittenhouse was a member of the Firm. *See* FED. R. BKRTCY. P. 2016(b), S.C. APP.CT. R. 407, 1.5(e). Second, Plaintiffs' communication with Defendant Rittenhouse was intertwined to such an extent with the Firm that the Firm impliedly represented that Rittenhouse was authorized to act on behalf of it. For example, Defendant Rittenhouse communicated with Plaintiffs by correspondence drafted on the Firm's letterhead, and this letterhead included Rittenhouse's name on it. Also, to speak with Defendant Rittenhouse, Plaintiffs telephoned the Firm. Fi-

---

7. The majority view is that the preparation of bankruptcy petitions constitutes the practice of law. *See* 1 COLLIER ON BANKRUPTCY *supra* at ¶ 8.02[4][d].

nally, on the bankruptcy petition Rittenhouse prepared for Plaintiffs, Rittenhouse represented that he was affiliated with the Firm.

Importantly, Plaintiffs relied on these implications of an agency relationship. Mr. Brown testified that he and his wife paid attorney's fees to the Firm expecting representation from the Firm; however, this reliance was to the Plaintiffs' detriment as they did not receive authorized legal representation to assist them in their filing for bankruptcy in South Carolina. Because of the apparent agency relationship between Defendants, the Firm cannot deny the existence of its agency relationship with Rittenhouse, and the Firm is jointly and severally liable for the damages caused by its agent Rittenhouse.

Ultimately, the applicable statutes[8] and case law indicate that the South Carolina legislature and courts impose a high level of public protection from the unauthorized practice of law. Accordingly, the court finds that Defendants engaged in the unauthorized practice of law in South Carolina.

## B. Aiding and Abetting

Plaintiffs allege that the Firm aided and abetted Defendant Rittenhouse's unauthorized practice of law in South Carolina and is jointly and severally liable with Rittenhouse. Because of its prior findings in this opinion regarding the principal-agent relationship between the Firm and Rittenhouse, the Court finds that it is not necessary to further formally consider the issue of aiding and abetting at this time.

---

**8.** The Court further notes that Defendants' conduct could also constitute a felony in this State. According to S.C. CODE ANN. § 40–5–310 "[n]o person may practice or solicit the cause of another person in a court of this State unless he has been admitted and sworn

## C. Unfair Trade Practices

 Plaintiffs also requested the Court to find Defendants' conduct an unfair trade practice. South Carolina's Unfair Trade Practices Act ("UTPA") provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . declared unlawful." S.C. CODE ANN. § 39–5–20(a) (Law. Co-op.1976 and Supp. 1985). In order to prevail under a UTPA claim, a plaintiff must demonstrate the following: " '(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest.' " *Staley v. Conseco Health Ins. Co. (In re Staley)*, C/A No. 99–04622–W; Adv. Pro. No. 99–80383–W (Bkrtcy.D.S.C.7/12/2000) (quoting *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir.1998)). As for the last factor, courts have emphasized that an unfair trade practice is deemed to have an adverse impact on the public interest when such practice has potential for repetition. *See id.* It is not sufficient that a practice has solely a private effect on the parties to the transaction, and courts "have consistently rejected speculative claims of adverse public impact and required evidentiary proof of such effects." *Id.* (quoting *Omni Outdoor Advertising v. Columbia Outdoor Advertising*, 974 F.2d 502, 507 (4th Cir.1992)).

 In this case, Defendants clearly violated the rules of practice for attorneys

as an attorney. A person who violates this section is guilty of a felony and, upon conviction, must be fined not more than five thousand dollars or imprisoned not more than five years, or both."

in South Carolina when they held themselves out as attorneys authorized to practice in the State and by their fee splitting arrangement. More specifically, they held themselves out as qualified to file bankruptcy pleadings in the District of South Carolina when, in fact, they are not authorized to do so. Despite Defendants' wrongdoings and unlawful practices in this case, the Court finds that Plaintiffs have only offered proof of how Defendants' actions impacted them directly, and no evidence was presented to demonstrate that Defendants could potentially engage in these practices repetitively. Therefore, the Court finds that no recovery is warranted in this case under the UTPA.

### D. Unconscionability

■ Plaintiffs also claim that Defendants allowed them to pay the $1,680.00 retainer in two or more installments; thus, Plaintiffs allege that Defendants made a consumer credit loan as contemplated by the South Carolina Consumer Protection Code. The Consumer Code applies to consumer loans that are defined as "loan[s] made by a person regularly engaged in the business of making loans" in which the debt is for personal, family or household purposes and that it is payable in two or more installments. *See* S.C. CODE ANN. § 37-3-104 (Law. Co-op.1976 & Supp. 2000). Plaintiffs base their claim on § 37-5-108 of the Consumer Code which states that "[w]ith respect to a transaction that is, gives rise to, or leads the debtor to believe will give rise to, a consumer credit transaction," the Court may scrutinize the transaction to determine whether it was induced by unconscionable conduct or whether any term or part of it was unconscionable at the time it was made. If the Court so finds, it may award a consumer actual damages, costs, reasonable attorney's fees and a statutory penalty in an amount no less than $100.00 and no more

than $1,000.00. *See* S.C. CODE ANN. § 37-5-108(2) (Law. Co-op.1976 & Supp.2000).

In this case, Defendants are not in the business of making loans, nor is Plaintiffs' payment for the retainer in two or more installments a consumer credit loan as contemplated by the South Carolina Consumer Protection Code. Therefore, the Court finds that no recovery is warranted in this case pursuant to the South Carolina Consumer Protection Code.

### E. Damages

Plaintiffs requested actual and punitive damages, treble damages, statutory penalties, costs and reasonable attorney's fees. Plaintiffs prayed for punitive damages in the disjunctive, that is, that this Court award punitive or treble damages. In this case, the Court found that no recovery is warranted under the UTPA or the South Carolina Consumer Protection Code; therefore, the Court will not award treble damages or statutory penalties.

■ Plaintiffs suffered actual damages in the amount of attorneys' fees they paid to Defendants for legal services that Defendants were unauthorized to perform in South Carolina. South Carolina law clearly suggests that Defendants should not receive compensation for legal services they should not have performed in South Carolina. Indeed, in *First Union National Bank of South Carolina v. Soden,* 333 S.C. 554, 511 S.E.2d 372 (1998), the court denied attorney's fees to a pro se litigant whose husband, a licensed Wisconsin attorney but not licensed in South Carolina, prepared her case. The court reasoned that to allow the recovery of attorney's fees in such a situation would condone the unauthorized practice of law. *See id.* at 381. Guided by this philosophy, this Court finds the situation with Defendants and their attorneys' fees similar to *Soden:* to

**52**

allow attorneys who are neither licensed in South Carolina nor admitted on a *pro hac vice* basis to retain fees for work that they should not have performed would condone, if not encourage, the unauthorized practice of law. Because it would anomalous to permit Defendants to retain a fee for services they were unauthorized to perform, the Court orders Defendants jointly and severally to disgorge the entire fee ($1,680.00) to Plaintiffs. *See In re Peterson*, 163 B.R. 665, 676 (Bkrtcy.D.Conn. 1994).

■ In addition, the Court believes that Defendants' conduct was egregiously wrong as Defendants either knew or should have known that they were engaging in the unauthorized practice of law and misleading Plaintiffs into believing that Defendants could ably represent them in a South Carolina bankruptcy proceeding. Typically, the Court looks to Federal Rule of Bankruptcy Procedure 9011 to address sanctions issues; however, in this case, Rule 9011 is inapplicable because Defendants never presented a petition, pleading, written motion or other paper to the Court. When 9011 does not apply, the Court may rely on its inherent authority and 11 U.S.C. § 105 to address egregious conduct. Section 105 provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The Fourth Circuit Court of Appeals ruled that a bankruptcy court's statutory authority pursuant to Section 105 is a broad power that includes the authority to hold a party in civil contempt of court. *See In re Walters*, 868 F.2d 665, 669 (4th Cir.1989). Using both Section 105 and the Court's inherent authority to regulate those who practice before it, this Court has previously assessed attorney's fees for an improperly filed motion. *See In re Asbill*, 236 B.R. 192 (Bkrtcy.D.S.C.1999) *aff'd* 3:99–0773–19 (D.S.C.2000). In addition, this Court is cognizant of how other bankruptcy courts have applied their inherent authority to address certain issues. *See In re Moix–McNutt*, 220 B.R. 631, 638 (Bkrtcy.E.D.Ark.1998) (relying on its inherent authority, the court suspended an attorney and a law firm from representing debtors under any chapter of the Bankruptcy Code in both districts of Arkansas for four years); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (holding that federal courts could use inherent power to assess attorney's fees as a sanction); *In re Engel*, 246 B.R. 784, 795 (Bkrtcy.M.D.Pa.2000) (relying on its inherent authority, the court imposed a monetary fine for two cases in which an attorney engaged in misconduct).

■ Pursuant to Section 105 and exercising its inherent authority to enforce its rules of practice, this Court orders Defendants to pay Plaintiffs' attorney's fees and costs in pursuing this matter ($2,799.99 according to Plaintiffs' attorney's affidavit filed June 19, 2001). In addition, this Court orders Defendants to pay a fine of $3,000.00 to Plaintiffs. As noted earlier, Defendants, as attorneys, acted inexcusably. Defendants knew they were not authorized to assist Plaintiffs with their legal needs, yet, in spite of this knowledge, Defendants solicited and accepted fees from Plaintiffs and engaged in the unauthorized practice of law, all to Plaintiffs' detriment. This Court will not countenance such activities.

## CONCLUSION

From the arguments discussed above, it is therefore

**ORDERED,** that Defendants pay Plaintiffs' damages in the amount of $7,479.99 ($1,680.00 for attorney's fees Plaintiffs paid Defendants, $2,799.99 for attorney's fees and costs Plaintiffs incurred to pursue this action, and $3,000.00 in fines).

**AND IT IS SO ORDERED.**