Connie J. BROWN, f/k/a/ Connie J. Washington, Plaintiff,

v.

CITIFINANCIAL, INC., and Citifinancial, Inc., d/b/a American Health and Life Insurance Company, Defendants.

C.A. No. 2:05–cv–03047–PMD.

United States District Court, D. South Carolina, Charleston Division.

Jan. 13, 2006.

Christopher P. Biering, Moncks Corner, SC, for Plaintiff.

Julianne Farnsworth, Columbia, SC, for Defendant.

### *ORDER*

DUFFY, District Judge.

This matter is before the court on Defendants Citifinancial, Inc. ("Citifinancial") and American Health and Life Insurance Company's ("AHLIC") motion to compel arbitration and stay proceedings. For the reasons set forth herein, Defendants' motion is granted.

### I. *FACTS*

On April 11, 2002, Plaintiff Connie J. Brown ("Brown" or "Plaintiff") and Citifinancial entered into a loan agreement (the "Loan Agreement") through which Citifinancial provided a loan in the amount of $84,374.07 to Brown. This loan was secured by a mortgage filed in the public records of the County of Berkley in South

Carolina. In addition to this note and Mortgage, Citifinancial offered to Brown a policy of Mortgage Life Insurance (the "Policy") on the life of Brown's husband, Luke Brown. This Policy, supplied by AHLIC, a solely owned subsidiary of Citifinancial, provided that the loan balance would be satisfied, paid in full, should either Plaintiff or her husband die during the scheduled payments required under the Loan Agreement. Plaintiff was under the belief at the time of closing, allegedly based on statements made by Citifinancial, that she had purchased insurance on her entire loan balance with the Defendant, inclusive of an equity line.

The Loan Agreement contains a provision (the "Agreement") requiring that "all disputes between borrower and lender ... will be resolved by a mandatory, binding arbitration." (Def. Exhibit 1 at 3.) Similarly, the Policy states that "any claim, dispute, disagreement or legal proceeding for the insurance described in this policy is subject to any arbitration agreement related to the debt. Read the arbitration agreement carefully. It may limit your rights." (Application for Insurance, Def. Exhibit 3.)

Plaintiff Brown made payments as scheduled under the terms of the Loan Agreement until October 19, 2002, when her husband Luke Brown died. At first, AHLIC did not make the appropriate payments under the terms of the Policy. On March 26, 2004, AHLIC paid a lump sum of $86,272.41, in full and final payment on behalf of Plaintiff to Citifinancial in full satisfaction of the obligations due under the note and mortgage. Plaintiff alleges that, despite the payment in full of the mortgage, Defendant has failed to provide a satisfied mortgage for filing in the public records of Berkeley County and has maintained an improper and illegal lien against Plaintiff's property. Accordingly, on September 15, 2005, Plaintiff brought the following causes of action in South Carolina Court of Common Pleas as against Citifinancial and AHLIC: (1) action for violation of S.C.Code § 29–3–320, (2) breach of implied duty of good faith and fair dealing, (3) action for violation of South Carolina Consumer Protection Code, § 37–4–205. Plaintiff demands judgement in the amount of $25,000.00, actual damages, punitive damages, the costs of this action, attorney fees and such other and further relief as might be just and proper.

On October 26, 2005, Defendants removed this action to federal court based on diversity jurisdiction. At the same time, Defendants moved pursuant to Sections 2, 3, and 4 of the Federal Arbitration Act ("FAA")[1] to enforce their right to arbitration as provided by the Agreement contained in the Loan Agreement and referred to by the Policy. Plaintiff does not contest Defendants' assertion that the FAA applies to the arbitration clause at issue. (Pl. Response at 1.)

## II. *DISCUSSION*

### A. The Federal Arbitration Act

 The Federal Arbitration Act ("FAA") represents "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); 9 U.S.C.A. §§ 1–16 (1999). Accordingly, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

 The FAA requires a court to stay "any suit or proceeding" pending arbitra-

---

1.  9 U.S.C. § 1, *et seq.*

tion of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. "This stay-of-litigation provision is mandatory." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir.2002). "A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Id.* (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir.2001)).

▪▪▪ While there is a strong policy favoring arbitration, courts are nonetheless "called upon to determine whether the particular dispute at issue is one to be resolved through arbitration." *Murray v. United Food and Commercial Workers International Union et al.*, 289 F.3d 297, 302 (4th Cir.2002). This requires a limited inquiry into whether "a valid agreement to arbitrate exists between the parties" and whether "the specific dispute falls within the substantive scope of that agreement." [2] *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir.1999). "Although highly circumscribed, the judicial inquiry is not focused solely on an examination for contractual formation defects such as lack of mutual assent and want of consideration." *Id.* "Rather, revocation of an arbitration agreement may also be sought "under such grounds as exist at law or in equity, including fraud, duress, and unconscionability." *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001); 9 U.S.C.A. § 2; *see also, Murray*, 289 F.3d at 302 ("equity may require invalidation of an arbitration agreement that is unconscionable [or] ... that allows an employer to ignore the arbitration result.").

**2.** Some courts have termed this an inquiry into the substantive arbitrability, which is properly determined by the court, in contrast to questions of procedural arbitrability which are within the jurisdiction of the arbitrator. *See, e.g., Hooters of America, Inc. v. Phillips*, 39 F.Supp.2d 582, 609 (citing *Glass v. Kidder*

## B. Plaintiff's Argument

Plaintiff (1) contests the validity of the Agreement, (2) argues that her claims are not within the scope of the arbitration agreement, and (3) claims that Defendants have waived their right to arbitration. The court addresses each of these arguments in turn:

### 1. Does a valid agreement to arbitrate exist between the parties?

#### a. Plaintiff claims that Citifinancial's alleged violation of S.C.Code 40–5–320 renders the Agreement void.

▪▪▪ Plaintiff alleges that Citifinancial engaged in the unauthorized practice of law, violating S.C.Code § 40–5–320, when it failed to have an attorney prepare Plaintiff's loan documents and attend Plaintiff's loan closing. This violation, Plaintiff argues, renders the Agreement contained within the Loan Agreement void.

▪▪▪ Under South Carolina law, preparation of mortgage instruments by lay persons is prohibited as the unauthorized practice of law. *State v. Buyers Service Company, Inc.*, 292 S.C. 426, 357 S.E.2d 15 (1987). At this time, the court is presented with insufficient evidence to determine whether Defendants have committed such a violation. Nonetheless, whether or not Defendants are guilty of violating this criminal statute has no effect on the validity of the parties' agreement to arbitrate. South Carolina law does not require a lawyer to be present in order for an agreement to arbitrate within a mortgage or insurance agreement to be valid.[3] Accord-

*Peabody & Co., Inc.*, 114 F.3d 446 (4th Cir. 1997)).

**3.** Plaintiff does not allege that the underlying Mortgage is invalid. Accordingly, the court need not consider this issue.

ingly, absent some evidence of unconscionability or fraud as a result of the failure of a lawyer to be present, Plaintiff has alleged no reason to find that the Agreement is invalid.[4]

■ The court also notes that there is no private cause of action for the unauthorized practice of law. The South Carolina Supreme Court has recommended that "any interested individual who becomes aware of such conduct [which may be the unauthorized practice of law] to bring a declaratory judgment action in this Court's original jurisdiction to determine the validity of the conduct." *In re Unauthorized Practice of Law Rules*, 309 S.C. 304, 422 S.E.2d 123, 125 (1992). It did not, however, authorize a private right of action. *Linder v. Insurance Claims Consultants, Inc.*, 348 S.C. 477, 560 S.E.2d 612, 623 (2002). Furthermore, South Carolina has statutes which prevent the unauthorized practice of law, and while they state such activity will be deemed a crime, they do not sanction a private cause of action. S.C.Code Ann. §§ 40–5–310 and –320 (2001). Accordingly, Plaintiff may not claim damages as a result of Citifinancial's alleged violation of this statute.

**b. Plaintiff claims that the Agreement is void because Citifinancial failed to disclose that it was related to AHLIC, and because AHLIC was not registered with either the South Carolina Department of Insurance or the South Carolina Secretary of State.**

All of these attacks upon the validity of the formation of the Agreement are meritless. First, Citifinancial did disclose to Plaintiff its relationship to AHLIC. The Loan Agreement, under a heading marked "Insurance," specifically discloses:

> (1) the insurance company [AHLIC] may be affiliated with Lender [Citifinancial], (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or insurance company may realize some benefit from the sale of [the] insurance.

(Loan Agreement at 2.)[5] Further, it is clear from information provided by the South Carolina Department of Insurance that AHLIC is properly registered and has been so registered since 1955. Finally, pursuant to S.C.Code § 38–39–30, a foreign corporation is not required to be registered with the Secretary of State. Accordingly, these assertions that Defendants behaved improperly so as to invalidate the Agreement are entirely without merit.

After a thorough review of the Agreement and Plaintiff's objections to it, the court can find no evidence of fraud, duress, or unconscionability that would impugn the validity of the arbitration agreement. Accordingly, the court finds that a valid arbitration agreement exists between the parties.

**2. Do these specific disputes fall within the substantive scope of that agreement to arbitrate?**

■ The next inquiry is whether Plaintiff's claims are within the scope of the

---

4. Any allegation of misconduct or unconscionability is further dispelled by the fact that Plaintiff and her husband were both informed of their right to have an attorney present at the loan closing and specifically declined to be so represented. (Attorney/Insurance Preference Checklist, Def. Exhibit 1 to Reply.)

5. Even if Citifinancial had failed to make this disclosure, this failure, absent some evidence of harm, would not provide a basis for avoiding the enforcement of the arbitration agreement.

agreement to arbitrate. The Agreement requires that "all disputes between borrower and lender ... will be resolved by a mandatory, binding arbitration." (Loan Agreement at 3.) This provision refers to "any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing" between Brown and Citifinancial, explicitly including any disputes related to "any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction." (*Id.*) Similarly, the AHLIC Policy states on its face that "any claim, dispute, disagreement or legal proceeding for the insurance described in this policy is subject to any arbitration agreement related to the debt." (Application for Insurance, Def. Exhibit 3.) Under this type of broadly-worded clause, Plaintiff's claims are subject to arbitration if they arise from the Loan Agreement or bear a "significant relationship" to the Loan Agreement. *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir.1996) (discussing standard for determining scope of arbitrable issues); *see also Long v. Silver*, 248 F.3d 309, 316–17 (4th Cir.2001) (same).

In this case, Plaintiff's claims arise from Defendants' alleged failure to timely and in good faith pay Plaintiff's life insurance Policy and then record the satisfaction of the lien on Plaintiff's property. Defendant's contractual obligation to perform these acts was created by the terms of the Loan Agreement. (Loan Agreement at 1–2.) Because each of Plaintiff's claims arises from or is significantly related to the Loan Agreement, the entire action is subject to arbitration. *See, e.g., Galbavy v. Don Galloway Homes, Inc. & Don Galloway*, No. 2:94–2340–23 (D.S.C. July 19, 1996).

### 3. Did Defendants waive their right to seek arbitration?

■ Plaintiff asserts that Defendants waived their right to arbitrate by failing to respond to an email in which Plaintiff's counsel requested details on the arbitration procedure.[6] (Pl. Exhibit C.) While "[t]here is no set rule as to what constitutes a waiver of the right to arbitrate," South Carolina courts consistently hold that to establish waiver, "a party must show it has been unduly burdened by the other party's delay in seeking arbitration." *Deloitte & Touche, LLP v. Unisys Corp.*, 358 S.C. 179, 594 S.E.2d 523, 525 (2004). Plaintiff has made no such showing. Even if Defendants did fail to promptly respond to an email inquiry, Plaintiff has presented no evidence that this delay caused Plaintiff to be unduly burdened.

In this case, it is clear that Defendants have not abandoned the right to arbitrate. Upon Plaintiff's filing of her complaint, Defendant promptly removed the case and contemporaneously filed its motion to compel arbitration. Plaintiff even admits that Defendants have not substantially invoked the litigation process. (Pl. Response at 4.) Because Defendants' timely invoked the right to arbitrate before substantially invoking the litigation process, the court finds that Defendants did not delay in seeking arbitration. Accordingly, Defendants have not abandoned their right to arbitrate.

### III. CONCLUSION

It is, therefore,

---

**6.** Plaintiff also asserts that Defendants' delay in paying a valid insurance claim and delay in the satisfaction of the mortgage constitutes sufficient "delay" to constitute a waiver of arbitration rights. However, these alleged delays are actually the substance of this underlying dispute. Accordingly, these delays are not "delays in seeking arbitration" such as would constitute waiver.

ORDERED, for the foregoing reasons, that Defendants' motion to submit this action to arbitration is **GRANTED.** The entire action is hereby **REFERRED** to arbitration according to the terms of the underlying Agreement. This action is **STAYED** pending arbitration.

**AND IT IS SO ORDERED.**