### 7240

#### *IN RE* DUNCAN.

ATTORNEY AT LAW—CONTEMPT.—One who advises another as to his legal rights, accepts money of him as compensation for his services in procuring the consent or order of a magistrate that an imprisonment already entered on be discontinued on payment of the fine first imposed in the alternative, practices law, and an attorney previously debarred is in contempt of Court by so doing.

Information in the original jurisdiction of this Court by Attorney-General J. Fraser Lyon.

July 17, 1909. The opinion of the Court was delivered by

MR. JUSTICE WOODS. In a proceeding instituted against John T. Duncan this Court, on the 11th day of September,

1908, rendered the following judgment: "That said John T. Duncan be, and he is hereby, ordered to be stricken from the roll of attorneys of this State, and that he appear before the Clerk of this Court and render up unto him his certificate of admission to practice law in this State for cancellation by said Clerk; and that he, the said John T. Duncan, from henceforth and forevermore, be debarred and not be heard as an attorney or counselor at law, nor otherwise act as lawyer, in the State of South Carolina, nor in any other State, basing his claim upon the same certificate hereby ordered to be cancelled and forfeited; and let the decretal portion of this opinion be forthwith served on said John T. Duncan." 80 S. C., 303. On the 20th day of April, 1909, Honorable J. Fraser Lyon, attorney-general, filed an information in this Court, alleging:

"That immediately after the passage of said order it was duly and legally served upon the said John T. Duncan.

"That thereafter, to wit: about the middle of February, 1909, the said John T. Duncan did counsel and act as attorney for Nita Saunders; that he advised her as to the legal rights of her husband, Jim Saunders, who was at that time serving a sentence upon the county chaingang for Richland county, and that he contracted with the said Nita Saunders to give her his professional services as an attorney to obtain the release of her husband, Jim Saunders, from the county chaingang.

"That the said John T. Duncan agreed to obtain the release of the said Jim Saunders from the chaingang for the sum of fifteen dollars, five dollars of which was then and there paid to the said John T. Duncan by Nita Saunders, and the balance of ten dollars, as agreed upon, was secured by a mortgage of certain personal property of the said Nita Saunders.

"That the above statements are made upon information obtained from two affidavits hereto attached, and are pre-

sented to this Honorable Court for such disposition as to it may seem just and proper."

These allegations were based on affidavits of Nita Saunders and Jesse Montgomery, which were filed with the information.

On these papers the Court made an order, requiring John T. Duncan to show cause why he should not be attached for contempt of the order of disbarment. On that day John T. Duncan appeared in person and presented his sworn return, denying that he had violated the order of the Court by practicing law, and giving a detailed narrative of his transactions with Nita Saunders and Jesse Montgomery.

Comparing the affidavits submitted in support of the information and the return of Duncan, we find there is no material difference as to the pertinent facts. Jim Saunders, the husband of Nita Saunders, was convicted of some crime in a magistrate's court and sentenced to serve a term on the public works of the county or pay a fine of ten dollars. On default in payment of the fine, the convict was put to work with the county chaingang. Nita Saunders then applied to Duncan for assistance in raising the money to pay the fine and in procuring the release of her husband. Duncan received from her five dollars in cash and took from her a mortgage of her household goods for ten dollars, under a contract with her that he would undertake to procure the convict's release by payment of the fine of ten dollars, and that he would have the remaining five dollars for his services. According to Duncan's account, he was delayed in procuring the acceptance of the fine and the release of the convict by reason of the retirement of the magistrate who had tried the case, and the lack of information of his successor concerning the facts of the matter. Owing to the delay Nita Saunders became dissatisfied with Duncan's course and, upon demand on her behalf, he returned the five dollars in cash and destroyed the mortgage.

The question is, whether the services undertaken and performed by Duncan constituted the practice of law. It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law. An attorney at law is one who engages in any of these branches of the practice of law. The following is the concise definition given by the Supreme Court of the United States: "Persons acting professionally in legal formalities, negotiations or proceedings by the warrant or authority of their clients may be regarded as attorneys at law within the meaning of that designation as employed in this country."

Under these definitions there can be no doubt that Duncan engaged in the practice of law. It is not pretended that the charge of five dollars was interest for the loan of five dollars to be advanced by Duncan as necessary to make up the convict's fine of ten dollars. On the contrary, it is expressly alleged in Duncan's return that the contract with Nita Saunders was that the convict, Jim Saunders, when released should pay him back by labor for his "money and trouble." This can only mean that Duncan contracted to render the service of interviewing the magistrate, or other officer having the matter in charge, and make such a statement or showing to him that the convict would be released on payment of the fine, notwithstanding the fact that he had already commenced to serve his sentence on the public works. It further appears from the return that Duncan actually entered upon the performance of the service undertaken, by interviewing the retired magistrate, who tried the

case, and his successor in office, and asking that the convict be discharged on payment of the fine. It does not affect the character of the service that possibly all this might have been done by Nita Saunders herself; the conclusive fact is that Duncan advised Nita Saunders and acted for her, as his client, for the consideration of five dollars, in a matter not only connected with the law, but unconnected with any other subject except the administration of the criminal law. This was practicing law in violation of the order of the Court. While the respondent, John T. Duncan, has placed himself in contempt, in fixing the punishment consideration will be given to the respondent's disclaimer of any intended disobedience of the Court's order.

It is adjudged, that the return of John T. Duncan is insufficient, and that he has practiced law in violation of the judgment of this Court, made on the 11th day of September, 1908, and is, therefore, in contempt of the Court. It is further adjudged, that John T. Duncan do pay a fine of fifty dollars within ten days from the filing of this decree, and that upon his failure to pay such fine within that time that the sheriff of Richland county do arrest the said John T. Duncan and imprison him in the county jail for the term of ten days.