585 S.E.2d 773

John DOE, Alias, Petitioner,

v.

Henry D. McMASTER, Attorney General for the
State of South Carolina, Respondent,

and

South Carolina Bankers Association and
South Carolina Bar, Intervenors.

No. 25508.

Supreme Court of South Carolina.

Filed Aug. 5, 2002.

Reheard April 2, 2003.

Refiled Aug. 18, 2003.

IN THE ORIGINAL JURISDICTION.

David A. Wilson, of Horton, Drawdy, Ward & Jenkins, of Greenville, for petitioner.

Attorney General Henry D. McMaster, Deputy Attorney General Treva G. Ashworth, and Assistant Deputy Attorney General J. Emory Smith, Jr., all of Columbia, for respondent.

John T. Moore, C. Mitchell Brown and B. Rush Smith, III, all of Nelson, Mullins, Riley & Scarborough, of Columbia, for Intervenor South Carolina Bankers Association.

John S. Nichols, of Bluestein & Nichols, of Columbia; and F. Earl Ellis, Jr., of Ellis, Lawhorne & Sims, of Columbia, for Intervenor South Carolina Bar.

Edward G. Menzie and Brian C. Bonner, both of Nexsen, Pruet, Jacobs & Pollard, of Columbia, for Amicus Curiae American Financial Services Associates.

## ORDER WITHDRAWING ORIGINAL OPINION AND SUBSTITUTING SUBSEQUENT OPINION ON REHEARING

PER CURIAM:

Opinion No. 25508, filed August 5, 2002, is hereby withdrawn and the following opinion substituted.

s/ Jean H. Toal, C.J.

s/ James E. Moore, J.

s/ John H. Waller, Jr., J.

s/ E.C. Burnett, III, J.

s/ Costa M. Pleicones, J.

JUSTICE BURNETT:

John Doe ("Doe"), a lawyer, petitioned this Court in its original jurisdiction to determine whether his business association with a lender bank ("Lender") and a title insurance company ("Title Company") constitutes the unauthorized practice of law in violation of Rule 5.5(b), of Rule 407 SCACR.[1] This Court granted the petition to provide declaratory judgment and appointed the Honorable Edward B. Cottingham as referee. We conclude Doe's business association, when conducted as herein below prescribed, is proper.

## FACTS

The parties have stipulated Lender contacted Doe to supervise the execution and recordation of loan documents under the following scenario:

1. Borrower contracts with Lender to **refinance** an existing first mortgage loan previously obtained from the same Lender.

2. Lender notifies Title Insurance Company of refinance transaction and provides relevant Borrower information.

3. Out of state office of Title Insurance Company licensed to do business in South Carolina orders title search from an independent contractor of its choosing.

4. Upon receipt of title search, Title Insurance Company prepares a title commitment for the benefit of the Lender.

5. Title Insurance Company orders pay-off of existing mortgage.

---

1. Rule 5.5(b), SCACR prohibits an attorney from assisting "a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law."

6. Title Insurance Company orders endorsement for Borrower's existing homeowners insurance policy, if requested by Lender.

7. Lender prepares loan documents including a set of instructions, a note and mortgage, Truth–in–Lending Statement, HUD–1 settlement statement, miscellaneous affidavits regarding employment and other forms and forwards to Attorney.

8. Attorney reviews loan documents and title commitment and performs any necessary curative work on the loan documents or regarding the title.

9. Attorney meets with Borrower to explain legal ramifications of loan documents and answer any questions Borrower may have regarding the documents or the refinancing process.

10. Attorney supervises execution of loan documents.

11. Attorney forwards properly executed loan documents to Title Insurance Company with specific instructions regarding how, when and where to satisfy the existing first mortgage and to record the new mortgage and any assignments, if applicable. Attorney also authorizes the disbursement of funds if the Borrower does not rescind during the three-day period set forth in the Truth–In–Lending Act, 15 U.S.C. § 1601, *et seq.* (1997).

12. In accordance with the Attorney's instructions, Title Insurance Company satisfies the existing first mortgage and transmits for recording the new mortgage and any assignments, if applicable, and disburses funds pursuant to the HUD–1 settlement statement.

13. The Lender or, in accordance with the Attorney's instructions, the Title Insurance Company transmits documents evidencing the satisfaction of the paid-off mortgage to the appropriate Register of Deeds for recording.

14. Title Insurance Company issues final title insurance policy to Lender.

15. For representing the Borrower, Attorney receives a fee consistent with the fee typically charged in a South Carolina refinance transaction.[2]

## DISCUSSION

 The issue of unauthorized practice of law in the area of real estate closings is a prolonged legal issue assuming growing national prominence.[3] The South Carolina Constitution provides the Supreme Court with the duty to regulate the practice of law in the state. *See* S.C. Const. art. V, § 4; *In re Unauthorized Practice of Law Rules, supra; see also* S.C.Code Ann. § 40–5–10 (1986).

 "The generally understood definition of the practice of law 'embraces the preparation of pleadings, and other papers incident to actions and special proceedings, and the management of such actions and proceedings on behalf of clients before judges and courts.'" *State v. Despain*, 319 S.C. 317, 319, 460 S.E.2d 576, 577 (1995) (quoting *In re Duncan*, 83 S.C. 186, 189, 65 S.E. 210, 211 (1909)). The practice of law, however, "is not confined to litigation, but extends to activities in other fields which entail specialized legal knowledge and ability." *State v. Buyers Service Co., Inc.*, 292 S.C. 426, 430,

---

2. Due to the nature and procedural posture of this case, this opinion is limited to the stipulated facts outlined above. *See In re Unauthorized Practice of Law Rules*, 309 S.C. 304, 305, 422 S.E.2d 123, 124 (1992).

3. Disputes between attorneys and real estate service providers consistently appear in cases since 1917. *See, e.g., Title Guar. & Trust Co. v. Maloney*, 165 N.Y.S. 280 (Sup.Ct.App.Term1917); *see generally* Joyce Palomar, *The War Between Attorneys and Lay Conveyancers Empirical Evidence Says "Cease Fire!"*, 31 Conn. L.Rev. 423, 471–74 (1999). The issue is attracting attention from the Federal Trade Commission and the Anti–Trust Division of the United States Department of Justice. The FTC and USDOJ have taken a greater interest in the monopolistic effects of state's unauthorized practice of law rules in the real estate context. *See* John Gibeaut, *Real Estate Closing Tussle in Tarheel State*, 1 No. 3 ABA J. E Report 7 (2002). However, state limitations in the area are exempt from federal anti-trust liability under the Sherman Act's state action exception. *See Lender's Serv., Inc. v. Dayton Bar Ass'n*, 758 F.Supp. 429, 434–41 (S.D.Ohio 1991). Further, this Court grounds its unauthorized practice rules in the State's ability to protect consumers in the state and not as a method to enhance the business opportunities for lawyers. *See In re Unauthorized Practice of Law Rules, supra.*

357 S.E.2d 15, 17 (1987). For this reason, this Court has consistently refrained from adopting a specific rule to define the practice of law. *In re Unauthorized Practice of Law Rules,* 309 S.C. at 305, 422 S.E.2d at 124 (stating "it is neither practicable nor wise" to formulate a comprehensive definition of what the practice of law is). Instead, the definition of what constitutes the practice of law turns on the facts of each specific case. *Id.*

This Court last addressed the unauthorized practice of law in the context of real estate closings in *State v. Buyers Service Co., Inc., supra. Buyers Service* divided the purchase of residential real estate into four steps: 1) title search; 2) preparation of loan documents; 3) closing; and 4) recording title and mortgage.

Initially, Doe suggests the present case is different from *Buyers Service* because the buyer and Lender are attempting to refinance an existing mortgage and not to purchase new property. This distinction is without significance.

In refinancing a real estate mortgage the four steps in the initial purchase situations still exist. A title examination is conducted to determine the current status of the title and any new encumbrances; new loan documents and instruments must be crafted to ensure buyer obtains funds to pay off an existing mortgage and Lender receives a mortgage to protect its interest; buyer and Lender must close on the loan; and the settlement of the old mortgage and recordation of the new mortgage must be perfected. In sum, refinancing affects identical legal rights of the buyer and Lender as initial financing and protection of these rights is the crux of the practice of law.

## A. Title Search

The title search portion of the present case encompasses stipulated facts 2 through 6. Doe asserts Title Company has a right to furnish title because it is incidental to its business.

In *Buyers Service,* this Court addressed a commercial title company's preparation of title abstracts for persons other than attorneys or themselves. The State in the case argued the buyer relies on the title search to determine if he receives good, marketable title. We agreed and rejected the title

company's argument that it did not need attorney supervision because the title search was merely incidental to their own business. Instead, we found the title search company could conduct title examinations only under the supervision of a licensed attorney because the "examination of titles requires expert legal knowledge and skill" and the search affected the rights of buyers. *Id.* at 432, 357 S.E.2d at 18.

According to the stipulated facts it appears Title Company conducts a title search and prepares a commitment, for the benefit of the Lender, without supervision by a licensed attorney. While Doe notes the Title Company is licensed to do business in South Carolina, we rejected the incidental-to-business approach in *Buyers Service.*

■ Title Company's title search and preparation of title documents for the Lender, without direct attorney supervision, constitutes the unauthorized practice of law. The title search and subsequent preparation of related documentation is permissible only when a licensed attorney supervises the process. In order to comply with this Court's ruling Doe must ensure the title search and preparation of loan documents are supervised by an attorney.

## B. Preparation of Loan Documents

■ Stipulated facts 7 and 8 concern Lender's preparation of loan documents as well as the attorney's review of the documents and subsequent curative work, if needed. Doe argues the preparation of real estate documents constitutes the practice of law, but Lender has a *pro se* right to prepare documents where it is a party. We disagree.

South Carolina law recognizes an individual's ability to appear *pro se* with leave of the court. *See* S.C.Code Ann. § 40–5–80 (Supp.2002). Corporations, which are artificial creatures of state law, do not have a right to appear *pro se* in all instances. *See* S.C.Code Ann. § 40–5–320 (1986). We granted corporations the ability to appear *pro se,* with leave of the court, in civil magistrate's court. *See In re Unauthorized Practice of Law, supra.* We explicitly rejected a corporation's ability to appear *pro se* in a state circuit or appellate court. *Renaissance Enterprises, Inc. v. Summit Teleservices, Inc.,* 334 S.C. 649, 515 S.E.2d 257 (1999).

■ The right of a corporation to practice law by completing real estate loan documents is not co-extensive with an individual's right. Doe's citation to this Court's previous holdings to suggest otherwise is misplaced.[4] In *Buyers Service* we specifically held the preparation of real estate instruments by lay persons constituted the unauthorized practice of law. *See Buyers Service*, 292 S.C. at 430–31, 357 S.E.2d at 17–18. Without the presence of Doe, acting as an independent supervising attorney, Lender could not prepare such instruments.

■ Doe correctly differentiates this case from *Buyers Service* because an independent attorney will review the documents and correct them, if needed. Lender may prepare legal documents for use in refinancing a loan for real property as long as an independent attorney reviews and corrects, if needed, the documents to ensure their compliance with law.

## C. Closing

Stipulated facts 9 and 10 describe the closing process. We held in *Buyers Service* "real estate and mortgage loan closings should be conducted only under the supervision of attorneys." *Id.* at 434, 357 S.E.2d at 19.

Doe differentiates the present case from *Buyers Service* because an attorney is actively involved in the closing and answers any questions the buyer may have. The purchaser in *Buyers Service* never spoke with an attorney and any questions were answered by non-attorney employees of the title company. Additionally, in *Buyers Service* the title company employed attorneys to review the closing documents. Yet, we concluded the presence of attorneys, acting as employees, did

---

4. Doe cites to *In re Easler*, 275 S.C. 400, 272 S.E.2d 32 (1980) (holding that the preparation of a deed for another constitutes the unauthorized practice of law); *State v. Despain*, 319 S.C. 317, 460 S.E.2d 576 (1995) (holding that the preparation of legal documents for others to present in family court constitutes the practice of law). Doe argues these cases imply a corporation engages in unauthorized practice of law **only** where it seeks to act on behalf of others and not solely itself. We disagree.

*In re Easler* and *State v. Despain* concerned an individual attempting to provide legal advice or services to other individuals. The fact-specific holdings involved individuals providing legal services to others for a fee, therefore, the individual was not acting within the *pro se* exception. As previously stated, the *pro se* exception for corporations is strictly limited.

not save the company from unauthorized practice of law. This Court cited to an Arizona case [5] and approved its rationale that "adverse interests in real estate transactions make it extremely difficult for the attorney to maintain a proper professional posture toward each party." *Id.* at 431–32, 357 S.E.2d at 18.

Here Borrower employs Doe as an attorney to supervise the preparation of legal documents, then supervise the loan's closing and provide legal advice to the buyer. Doe is an independent attorney unlike the attorneys in *Buyers Service* who were employees of the title company. Doe's activities may still pose an ethical dilemma, however, because a lawyer may not represent a client whose interests may be adverse to another client unless the lawyer believes the representation will not adversely affect the relationship with the other client and the client consents after consultation.[6] *See* Rule 407, SCACR (Rule 1.7 Conflict of Interest).

█ Under the stipulated facts Lender retains Doe to supervise its own legal work as well as provide advice to the buyer at closing. Although the Lender and Buyer have adverse interests, there is no consultation with the buyer to waive any potential conflict. Because real estate closings present a unique situation regarding dual representation we do not believe it to be in the public's interest to create a *per se* rule barring an attorney under the stipulated facts from representing Lender and borrower. Instead, Doe may participate in the closing after giving full disclosure of his role to both parties and obtaining consent from both parties to continue.

## D. Recording Instruments

The final phase of the real estate loan process is recordation of the new mortgage and related documents, shown in stipu-

---

**5.** *State Bar of Arizona v. Arizona Land Title & Trust Co.*, 90 Ariz. 76, 366 P.2d 1, *reheard,* 91 Ariz. 293, 371 P.2d 1020 (1962).

**6.** These ethical concerns are only applicable when there is a business relationship between Lender and the attorney. At oral argument, Doe made clear that there is no formal business arrangement between Lender and him. Doe is chosen, as is often the case, by Borrower from a list of attorneys provided by Lender. Doe affirmed Lender informs Borrower of her right to employ an attorney not on the list.

lated facts 11 through 13. *Buyers Service* clarified the mailing of documents to the courthouse occurs as part of a real estate transfer, which is an aspect of conveyancing affecting legal rights, is the practice of law. We held "instructions to the Clerk of Court or Register of Mesne Conveyances as to the manner of recording, if given by a lay person for the benefit of another, must be given under the supervision of an attorney." *Buyers Service*, 292 S.C. at 434, 357 S.E.2d at 19.

The recordation process in the stipulation of facts establishes attorney supervision of the process. As such, Doe's supervisory activities do not constitute the unauthorized practice of law.

## CONCLUSION

We conclude Doe's association as discussed is not violative of the proscription against the unauthorized practice of law, as long as the association is conducted as herein prescribed.

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.