650 S.E.2d 474

**Eddie ROBERTS, Petitioner,**

v.

**Glen LaCONEY, d/b/a Refunds Plus, Respondent.**

No. 26376.

Supreme Court of South Carolina.

Submitted Aug. 14, 2007.

Decided Sept. 4, 2007.

98

Harry Clayton DePew, Law Office of Harry DePew, of Columbia, for Petitioner.

Glen K. LaConey, Refunds Plus, of Columbia, for Respondent.

H. Clayton Walker, Jr., and Robert L. Reibold, of Walker & Reibold, of Columbia, for Bridgewood Homes, Inc., Amicus Curiae.

PER CURIAM.

We accepted this declaratory judgment matter in our original jurisdiction, pursuant to *In re Unauthorized Practice of Law Rules Proposed by the South Carolina Bar,* 309 S.C. 304, 422 S.E.2d 123 (1992), to determine if respondent has engaged in the unauthorized practice of law. We also granted a motion for leave to file an amicus brief filed by Bridgewood Homes, Inc. The matter was referred to a Special Referee, by order dated May 17, 2005, to take evidence and issue a report containing proposed findings of fact and recommendations to the Court.

The Special Referee issued a Report of Proposed Findings of Fact and Conclusions of Law recommending this Court find respondent engaged in the unauthorized practice of law. Thereafter, respondent was the only party to file exceptions to the Report. A schedule for serving and filing the briefs and record in this matter was established. However, respondent failed to serve and file a record or brief as instructed.

Rule 208(a)(4), SCACR, states that if an appellant fails to file a brief, the appeal will be dismissed. Because respondent is the party objecting to the Special Referee's report by way of exceptions, and was instructed to serve and file the record and a brief addressing the exceptions, he is in the posture of an appellant. Accordingly, because he has failed to file a brief in the matter, we hereby dismiss his exceptions and, because we agree that respondent has engaged in the unauthorized practice of law, we adopt the following Report of the Special Referee as the opinion of this Court.

## SPECIAL REFEREE'S REPORT OF PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case was filed in the original jurisdiction of the Supreme Court of South Carolina. The Court appointed me as a special referee to take evidence and issue a report containing proposed findings of fact and recommendations concerning Petitioner's allegations that the Respondent has engaged in the unauthorized practice of law.

## I.  *Petitioner's Allegations*

The allegations turn on a document titled "Notice of Assignment and Assignment of Judgment," which Petitioner contends is essentially a contingency fee agreement for legal services, in which Respondent agreed to attempt to collect a judgment in exchange for a fee of approximately one-third. Petitioner contends that, under the terms of this agreement, Respondent engaged in the unauthorized practice of law in attempting to collect the judgment.

## II.  *Proposed Findings of Fact*

On January 3, 1996, Paul W. Nickoson[ ] obtained a judgment in the amount of $7587.67 against Eddie Roberts, d/b/a Eddie Roberts Auto Service.  Respondent approached Nickoson about attempting to collect this judgment.[1]  On August 17, 2004, Nickoson and Respondent executed a document entitled "Notice of Assignment and Assignment of Judgment."  The document provides in important part:

I, Paul W. Nickoson, Judgment Creditor in the above entitled actions, (hereinafter "Assignor"), do hereby transfer, assign and setover the Judgment rendered to me in this action to REFUNDS PLUS ... (hereinafter "Assignee") in exchange for a retention of a (66.6%) interest in the amount recovered by Assignee.

\*       \*       \*

Assignee, it's agents, assigns and successors shall have full authority to settle, compromise and enforce said Judgment, and Assignor withdraws all right to same.

(Reference to exhibits omitted).

On August 27, 2004, Respondent began the process of execution of the judgment by having the Richland County Clerk of Court command the Sheriff of Richland County to satisfy the judgment out of the personal or real property of

---

1.  It was not possible for the Special Referee to determine the precise manner in which Respondent solicited the opportunity to collect this judgment, because Respondent chose not to show up for the hearing. However, it is clear from the evidence that was presented that respondent solicited the business of collecting this and other judgments.  This evidence includes the fact that Respondent operated under the business name of Refunds Plus.

Roberts.... Respondent signed the Execution Against Property as "Plaintiff's Attorneys."

On September 2, 2004, Respondent wrote a letter to Roberts explaining that he was going to begin efforts to collect the judgment that he claimed had been "assigned" to him. (Reference to exhibit omitted). In this letter, Respondent explains the manner in which he planned to collect the judgment, including the manner in which he planned to use the judicial process. Specifically, Respondent stated his intention to file an action in the "Master–in–Equity Court to Order you to appear with your . . . financial records . . . and testify under oath. . . ." Respondent offered several legal opinions in the letter, including that a corporation Roberts apparently owned "would be held jointly and severably liable for this debt." He also made several threats about consequences Roberts would face if he did not cooperate and willingly satisfy the judgment.[2]

On September 17, 2004, Respondent served "Plaintiff's Request for Production of Documents" on Roberts, with an attached "Exhibit A" listing seventeen categories of documents Roberts was required to produce. (Reference to exhibit omitted). Respondent amended the Request for Production on September 18, 2004. (Reference to exhibit omitted). On September 29, 2004, Respondent again wrote Roberts making additional threats about how he would use the judicial process and the consequences Roberts would face if he did not pay the judgment. (Reference to exhibit omitted). .

On February 8, 2005, Respondent filed a "Notice of Motion and Motion for Supplementary Proceedings." (Reference to exhibit omitted). This motion resulted in an "Order of Reference and Rule to Show Cause" signed on February 15, requiring Roberts to attend a hearing and bring all his financial records. The Honorable Joseph Strickland, Master in Equity for Richland County, held a hearing sometime later and Respondent personally appeared as the representative of the judgment holder. Finally, on February 28, 2005, Respondent wrote Roberts again threatening consequences of not claiming

---

2. Many of these threats are entirely inappropriate, and would violate the Rules of Professional Conduct if made by a lawyer. However, this aspect of Respondent's conduct is not before me.

mail sent to Roberts, and threatening to "have you ARREST-ED and brought to court in restraints the way Moses was brought before Pharoah in the movie, 'The Ten commandments.'"

III. *Applicable Law*

■■■ "The generally understood definition of the practice of law embraces the preparation of pleadings, and other papers incident to actions and special proceedings, and the management of such actions and proceedings on behalf of clients before judges and courts." *Brown v. Coe*, 365 S.C. 137, 139, 616 S.E.2d 705, 706–07 (2005)(*citing Doe v. McMaster*, 355 S.C. 306, 311, 585 S.E.2d 773, 775–77 (2003); *State v. Despain*, 319 S.C. 317, 319 460 S.E.2d 576, 577 (1995); *In re Duncan*, 83 S.C. 186, 189, 65 S.E. 210, 211 (1909)). "The practice of law 'is not confined to litigation, but extends to activities in other fields which entail specialized legal knowledge and ability.'" *Linder v. Insurance Claims Consultants, Inc.*, 348 S.C. 477, 487, 560 S.E.2d 612, 617 (2002) (*quoting State v. Buyers Service Co., Inc.*, 292 S.C. 426, 430, 357 S.E.2d 15, 17 (1987)). Other than these general statements, there is no comprehensive definition of the practice of law. *See Linder*, 348 S.C. at 487, 560 S.E.2d at 617–18. Rather, what constitutes the practice of law must be decided on the facts and in the context of each individual case.

IV. *Proposed Conclusions of Law*

■■■ The "Notice of Assignment and Assignment of Judgment" is not an assignment of the judgment as it purports to be. The original judgment holder retained an ownership interest in the judgment. Respondent gained an interest that had value only on the successful collection of some portion of it. Respondent paid nothing for the interest he acquired. He was to be paid, if at all, only when the judgment was collected. The practical effect of their agreement is that Respondent was to be paid a fee to collect the debt. Therefore, the supposed "assignee," Respondent, was not acting entirely on his own behalf, but on behalf of the original judgment holder. Respondent could not have been practicing law if he had been acting on his own behalf under a true assignment. However, because he was acting on behalf of the original judgment

holder, his actions must be examined to determine whether they constitute the practice of law.

■ Respondent did many things on behalf of the judgment holder in the collection of this debt that meet the general definition of the practice of law. He prepared "pleadings, and other papers incident to actions and special proceedings." *See Brown*, 365 S.C. at 139, 616 S.E.2d at 706–07. These include "Plaintiff's Request for Production of Documents," the "Notice of Motion and Motion for Supplementary Proceedings," and the "Execution Against Judgment."

Respondent also managed the collection action "on behalf of [the judgment holder] before judges and courts." *See Id.* For example, Respondent prepared "Execution Against Judgment" and had it signed by the Clerk of the Circuit Court directing the Sheriff to satisfy the judgment. His "management" activities also include serving the Request for Production on Roberts, and filing the Motion he prepared in the Equity Division of the Circuit Court. He used the "Motion" to obtain an "Order of Reference and Rule to Show Cause." Most importantly, he appeared at a hearing before the Equity Division on behalf of the judgment holder.

In addition, Respondent developed a strategy to use in collecting the debt for Nickoson. In furtherance of this strategy, he sent letters to Roberts that were designed to induce him to pay the judgment. Some of these letters contained legal opinions formulated by Respondent. This is the type of strategic activity which the Supreme Court referred to in *Linder* as entailing "specialized legal knowledge and ability." 348 S.C. at 487, 560 S.E.2d at 617.

■ Finally, in determining whether someone is practicing law, it is important to consider representations the person makes about his own activity. As mentioned above, Respondent represented on the signature line of the "Execution Against Judgment" that he was acting as "Plaintiff's Attorneys." Despite the fact that this language appears to be part of the printed form Respondent was using, by signing the form as he did, Respondent made a public statement as to the role he was playing in collecting the judgment. The use of this language in a document being served on a judgment

debtor is reasonably understood to increase the chances of collecting the debt.

Other states have considered whether similar activity constitutes the unauthorized practice of law. In *Iowa Supreme Court Comm'n on Unauthorized Practice of Law v. A–1 Assocs., Ltd.*, 623 N.W.2d 803 (2001), the Supreme Court of Iowa concluded that an instrument similar to the "Notice of Assignment and Assignment of Judgment" used by Respondent was not in fact an assignment of a judgment, but was an agreement for collection services such as a lawyer would perform. The court noted that if the instrument truly had been an assignment, then the assignee could have attempted to collect the judgment without engaging in the practice of law. The court went on to state "A–1's claimed status as a bona fide assignee is defeated under this record, however, because the assignment—though absolute in form—is, in fact, a transfer intended primarily to secure payment for services rendered. (citation omitted). This is demonstrated by the fact that A–1 pays nothing for the purported 'assignment.' ... Courts throughout the country have condemned this practice as an attempt by collection agencies to accomplish indirectly what the law otherwise prohibits." (citation omitted). 623 N.W.2d at 808. The court concluded that A–1 Associated, Ltd. had engaged in the unauthorized practice of law. "So long as A–1 is not representing its own legal interests ..., but the legal interests of others, it is engaging—without license or other authorization—in the practice of law." 623 N.W.2d at 808–09.

In *State ex rel. State Bar of Wisconsin v. Bonded Collections, Inc.*, 36 Wis.2d 643, 154 N.W.2d 250 (1967),[3] the Supreme Court of Wisconsin considered the following issue: "Does a course of conduct whereby a collection agency takes assignments of accounts for collection, ..., brings suit in its own name, and then pursuant to a prior agreement deducts from the proceeds, costs, and a fixed percentage as its fee and remits the balance to the creditor, constitute the unauthorized practice of law?" 154 N.W.2d at 253–54. In concluding that it

---

3. In this case, the collection agency actually hired a lawyer to represent it in court. The basis of the court's decision, however, was that the collection agency was practicing law by representing the creditor, and the fact that the agency hired a lawyer to do so did not change that.

does, the court stated "[i]t is sheer hypocrisy to conclude that the percentage retained by the collection agency represents its equity or ownership share of the claim. It is its fee or charge for professional services rendered." 154 N.W.2d at 256. The Wisconsin court also noted that "[t]he collection agency by going into court representing itself as the client perpetrates a fraud on the court." *Id.*

*See also State ex rel. Norvell v. Credit Bureau of Albuquerque, Inc.,* 85 N.M. 521, 514 P.2d 40, 49 (1973) (assignments procured by credit bureau not truly taken to acquire title and ownership but to facilitate delivery of legal services for consideration constitute unauthorized practice of law); *State ex rel. Frieson v. Isner,* 168 W.Va. 758, 285 S.E.2d 641, 651–52 (1981) (citing numerous cases to support conclusion that assignment taken solely to maintain suit on creditor's claim is sham perpetrated on court to enable unauthorized practice of law).

## CONCLUSION

Based on the foregoing, we conclude respondent's actions, as outlined in this matter, constitute the unauthorized practice of law.

**JUDGMENT DECLARED.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.